IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NNENNA ELLA PETERS

v.                                   :   Civil Action No. DKC 20-2007

BEST BUY STORES, L.P., et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this dispute over installation of home systems and appliances are two motions filed by Defendants Best Buy Store, L.P., Magnolia Home Theater, and Magnolia Hi-Fi, LLC: (1) a motion in *limine* to exclude Plaintiff Nnenna Peters's expert, ECF No. 21, and (2) a motion for summary judgment, ECF No. 20.  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion in *limine* will be granted and the motion for summary judgment will be granted in part and denied in part.

**I.   Background**

The following facts are undisputed unless otherwise stated.  Ms. Peters went to a Best Buy store to order televisions and appliances.  ECF No. 22-1, at 5-6 (Ms. Peters's Interrogatory

Responses).[1]  Best Buy staff convinced her that Best Buy and its subsidiaries, Magnolia Home Theater and Magnolia Hi-Fi, LLC, had the experience, reputation, and size to handle the projects.[2]  *Id.* The agreed upon work included procuring and installing twenty-two televisions, equipment for a home theater system, speakers throughout the house, surveillance cameras, lighting, a drapery system, an intercom door station, upgraded internet, a control system for the televisions, music playing systems, lights, drapery systems, a cell phone signal booster, and programing for many of those systems.  *Id.* at 5 (Ms. Peters's Interrogatory Responses); 25-1, at 2 (Mr. Flaherty Expert Report).  The purported agreements are attached to the complaint.  ECF No. 2, exhibits 1 and 2.

By 2020, the various systems in the home were still not consistently working to Ms. Peters's satisfaction, despite Best Buy's continued work on the systems following their installation. ECF No. 22-1, at 14 (Ms. Peters's Interrogatory Responses). Problems included poor internet strength and the failure of some of the televisions and security cameras to work.  *Id.* at 11-14.

---

[1] It is unclear when Ms. Peters first sought Best Buy's services.  Ms. Peters states in her interrogatories that "[t]he contract started on June 5, 2014, with the payment of a $1000 dollar deposit by February, 2015."  ECF No. 22-1, at 6.  Elsewhere the record reflects that the Scope of Work for Ms. Peters's project was dated August 12, 2015 and signed on September 11, 2015.  For the purposes of this opinion, this discrepancy does not matter.

[2] Best Buy and the two Magnolia entities will be collectively referred to as "Best Buy."

Ms. Peters filed this lawsuit in the Circuit Court for Montgomery County, Maryland, and Best Buy removed it to this court. ECF Nos. 1, 2.  Ms. Peters's complaint contains three claims: breach of contract, negligence, and violation of the Maryland Consumer Protection Act ("MCPA").  ECF No. 2, at 4-6.  For Count I—breach of contract—Ms. Peters seeks compensatory damages in excess of $75,000.  ECF No. 2, at 5.  For Count II—Negligence—Ms. Peters seeks damages of $48,969.76, the cost of replacing carpet in the basement.  *Id.*  For Count III-Violation of the MCPA—Ms. Peters seeks compensatory damages in excess of $75,000 and reasonable attorneys' fees.  *Id.* at 6.

Following discovery, Best Buy moved to exclude Ms. Peters's expert, Mr. Orjan Dhimitri Gjoni.  Best Buy simultaneously moved for partial summary judgment.  Additional facts will be discussed as necessary.

## II.  MOTION IN *LIMINE*

Mr. Gjoni's opinions are contained in two reports—his initial report and his report rebutting Best Buy's expert, Christoph Flaherty, P.E.  ECF Nos. 12-1; 21-5.  His first report concludes:

> In my 15 year experience installing audio and video systems in custom homes, I have never found a customer with so many frequent problems and frustrations due to lack of professionalism and technical expertise from the people she hired to do the work.
>
> It is inconceivable to fathom that this project has been ongoing for 5 years and has

> not been complete.  From my experience this
> project should not have extended past 6 months
> and at a maximum one year.

ECF No. 12-1, at 2 (Mr. Gjoni Report).

The rebuttal report responds to the Flaherty report making factual counterarguments why Ms. Peters or other work done on the residence cannot be the cause of the problems in the home.  The rebuttal report concludes:

> My assessment is that proper programming of
> the equipment has not been accomplished
> because the issues continue to persist, and
> that it is the responsibility of Best
> Buy/Magnolia to ensure that the system that
> they have installed is problem-free.  Working
> on a residential project for over five years
> is an extraordinary amount of time.  It is my
> opinion that Best Buy/Magnolia did not work
> professionally or competently on the Project.

ECF No. 21-5, at 9 (Mr. Gjoni Rebuttal Report).

Mr. Gjoni owns his own small business, Capital Audio Video, Inc., which does audio-visual and security system installation. ECF No. 21-6, at 4 (Mr. Gjoni Depo.)  The business is based out of his home.  *Id.*  He has two employees—a manager and a part-time worker.  *Id.*  Mr. Gjoni has owned his business since 2009.  *Id.* The number of installations his company completes in a year varies— he estimated at his deposition that he completed five installations in 2020 and could not remember how many he completed in 2019 and 2018, before estimating ten in 2019 and between five and ten in

2018.  *Id.* at 6.   He further estimated his company grosses approximately $100,000.00 per year.  *Id.* 6-7.

Prior to owning Capital Audio Video, Mr. Gjoni had a "dealership" with DISH Network and DirecTV whereby he worked on his own installing satellite dishes.  He occasionally installed speakers as well.  *Id.* at 7.  He is certified by two camera companies to install their equipment.  *Id.* at 11.  To become certified, he had to attend a two- or three-hour class.  *Id.*  He is also certified by an audio system manufacturer to install its equipment.  *Id.*  He does not have any other certifications.  *Id.*  Mr. Gjoni attended Montgomery College for two years but did complete a degree program or graduate.  *Id.* at 5.  He has never taught or lectured.  *Id.* at 7.  He has not published any peer reviewed articles.  *Id.*  He has never worked for a retail store like Best Buy.  *Id.* at 34.  He has never won any awards in his field.  *Id.* at 5.  He has never testified in court under oath other than for traffic violations.  *Id.*  He has never been retained as an expert witness before this case.  *Id.* at 7.  He has never served as a forensic consultant.  *Id.*  The sole basis of his claim to expertise is his work experience, yet he has not provided a resume or CV.  *Id.* at 6, 7.

In preparing his first report, Mr. Gjoni conducted a two-hour inspection of Ms. Peters's home and spoke with her during that inspection.   *Id.* at 8.   His inspection consisted of making

observations about what systems and appliances in the house did or did not work.  *Id.* at 8-12; ECF No. 12-1, at 1-2 (Mr. Gjoni Report). He completed some testing, such as an internet speed test and confirming that that there was not a connection to an Apple TV device.  ECF No. 21-6, at 12-13 (Mr. Gjoni Depo.).  Otherwise, he did not conduct tests to determine why the systems and appliances were not working.  *Id.* at 13.

Mr. Gjoni was then asked by either Ms. Peters or her attorney to write a report rebutting the conclusions of Best Buy's expert, Mr. Flaherty.  *Id.*  at 18.  For the rebuttal report, Mr. Gjoni considered only Mr. Flaherty's report and Ms. Peters's responses to additional questions.  *Id.* at 21.  Although Mr. Gjoni's report references Ms. Peters's interrogatory responses, Mr. Gjoni never reviewed the interrogatory responses himself.  *Id.* at 20.  Instead, he relied on the Flaherty report's discussion of the interrogatory responses.  *Id.*  Photographs from the residence and internal Best Buy emails are attached to the rebuttal report as exhibits, but Mr. Gjoni did not attach them and at the time of his deposition had not reviewed them.  *Id.*  22-23.  He is unsure if it was Ms. Peters or Plaintiff's counsel who attached the exhibits.  *Id.*

As discussed above, Mr. Gjoni concluded that Best Buy did the work in this case unprofessionally, and that it took too long and involved too many people.  In his rebuttal report, Mr. Gjoni further noted that it was not standard in the field to continue

working for free on a project for over five years when, as claimed by Best Buy's expert, the problems were potentially caused by third-party interference. ECF No. 21-5, at 8.  Mr. Gjoni did not base his opinions on any identifiable industry standards.  Mr. Gjoni reiterated his opinions at his deposition, testifying that "[b]ased on my report, based on my expertise" Best Buy had too many people working on Ms. Peters's project. ECF No. 21-6, at 24 (Mr. Gjoni Depo.).  When pressed to be more specific, Mr. Gjoni opined that more than ten people was too many to work on Ms. Peters's project. *Id.*  Mr. Gjoni then conceded, however, that this was merely his personal opinion and not based on "standards in the industry" or training.  He admitted again that, other than the three company provided certifications discussed above, he had never received formal training on media or visual equipment installation, and he was not licensed as an electrician. *Id.*

## A.  Standard of Review

Under Federal Rule of Evidence 702, the district court has "a special obligation ... to 'ensure that any and all scientific testimony ... is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert*, 509 U.S. at 589).  Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

7

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Supreme Court held in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, that Rule 702 requires a trial judge to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."  509 U.S. 579, 589 (1993).

To be considered reliable, an expert opinion "must be based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) (citing *Daubert*, 509 U.S. at 592-93).  "Reliability of specialized knowledge and methods for applying it to various circumstances may be indicated by testing, peer review, evaluation of rates of error, and general acceptability." *Oglesby*, 190 F.3d at 250 (citing *Daubert*, 509 US at 593-94).  A court will not "credit an expert witness who 'testified to no customs of the trade, referred to no literature in the field, and did not identify [relevant principles],' but

merely gave 'his own subjective opinion.'" *Freeman v. Case Corp.*, 118 F.3d 1011, 1016 (4th Cir. 1997) (quoting *Alevromagiros v. Hechinger*, 993 F.2d 417, 421 (4th Cir. 1993)).  The relevance prong asks whether the proffered opinion is "relevant to the facts at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999).  The district court enjoys "broad latitude" in determining the reliability and admissibility of expert testimony, and its determination receives considerable deference. *Kumho Tire Co.*, 526 U.S. at 142 (citing *Gen. Elec. Co v. Joiner*, 522 U.S. 136, 143 (1997)).  The proponent of the testimony must establish its admissibility by a preponderance of proof. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) (citing *Daubert*, 509 U.S. at 592 n. 10).

    B. **Discussion**

    Best Buy argues that Mr. Gjoni's proffered opinions do not satisfy the reliability or relevance prongs because he has not relied on an adequate factual basis or applied methods or reasoning accepted in his field, and because his testimony is based on his own personal experience and speculation.  ECF No. 21-1, at 12-13. Ms. Peters responds that Mr. Gjoni's proffered opinion satisfies the reliability prong, because he did essentially the same investigation as Best Buy's expert, and the relevance prong, because whether "the audio and visual system is functioning properly or as intended is certainly not within a layperson's

knowledge." ECF No. 23, at 4-5, 7. Ms. Peters offers no citation for her "the other side did it too" theory.

Mr. Gjoni's proffered opinions do not satisfy the reliability prong. Mr. Gjoni has not identified any industry standards, trainings, or publications on which he bases his opinions. His opinions in this case are his personal opinions, not opinions based on industry standards or norms. ECF No. 21-6, at 24 ("[t]his is my opinion"). At best, he stated the vague conclusion that his experience was "common in the field." *Id.* Not only is that conclusion insufficient to establish that his opinions are based on industry standards, but it is also contradicted by his admission that he never worked for a retail store like Best Buy. *Id.* at 34. In essence, Mr. Gjoni's opinions are nothing more than his saying "Best Buy was wrong for not doing it my way," but without explaining why "his way" is an industry approved way of doing things. Mr. Gjoni's "own subjective opinion," will not be credited. *Freeman*, 118 F.3d at 1016 (quoting *Alevromagiros*, 993 F.2d at 421). Best Buy's motion in *limine* will be granted.

### III. SUMMARY JUDGMENT

Best Buy moves for partial summary judgment on Ms. Peters's negligence claim, Count II, and her Maryland Consumer Protection Act claim, Count III. ECF No. 20-1, at 3. Ms. Peters's opposes the motion for both counts.

**A.    Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "[S]ummary judgment should be granted only when it is perfectly clear that no issue of material fact exists." *Raynor v. Pugh*, 817 F.3d 123, 129 n.2 (4th Cir. 2016) (quotation omitted).  A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Liberty Lobby*, 477 U.S. at 248.  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  A court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted), but "a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences," *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact.  No genuine dispute of material fact exists, however, if the nonmoving party fails to make a

11

sufficient showing on an essential element that she bore the burden to prove. *Celotex*, 477 U.S. at 322–23.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is her responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that there is a genuine issue for trial.  *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

**B.   Negligence Claim**

Ms. Peters's negligence claim asserts that the icemaker she purchased from Best Buy malfunctioned and that a Best Buy technician left a water valve open while repairing it, flooding her basement.  ECF No. 2, at 5.  The carpet in the basement was damaged as a result and its replacement cost was $48,969.76.  ECF No. 22-1, at 18.  Best Buy argues that the economic loss doctrine bars the negligence claim.  ECF No. 20-1, at 3.

Under Maryland law, "when the alleged negligence causes property damage, rather than purely economic harm, the economic loss doctrine does not apply at all."  *Arch Insurance v. Costello Construction of Maryland, Inc.*, No. 19-cv-1167-DKC, 2020 WL 1158776, at *3 (D.Md. Mar. 9, 2020).

Ms. Peters alleges property damage—the damaged carpet in the basement.  Thus, the economic loss doctrine does not apply.  Best Buy did not respond to Ms. Peters's economic loss arguments in its

reply brief, apparently abandoning the argument.  Defendants are not entitled to judgment on this issue.

    **C.   MCPA Claim**

Ms. Peters asserts that her MCPA claim is brought specifically under § 13-301(2)(iv).[3]  ECF No. 22, at 7.  That provision states that "[u]nfair, abusive, or deceptive trade practices include any [r]representation that [c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style or model which they are not."

Ms. Peters argues that Best Buy is not entitled to summary judgment because whether Best Buy's equipment and services were to the standard represented to her is "highly disputed and an ultimate issue for trial."  ECF No. 22, at 8-9.  Ms. Peters never states what standard, quality, grade, style, or model she was promised by Best Buy, other than that Best Buy told her it had the ability to complete the installation of the audio visual and security systems and appliances she wanted in her home.  ECF No. 22, at 8-9.  Thus, her theory of this claim appears to be that Best Buy breached the contract, and that merely breaching the contract violated the MCPA.

---

[3] Best Buy's motion for summary judgment seems to argue that Ms. Peters failed to establish that Best Buy committed a deceptive trade practice under a different provision of the MCPA.  After Ms. Peters's opposition asserted that her MCPA claim was brought under 13-301(2)(iv), Best Buy addressed that theory in its reply.  ECF No. 25, at 3.

A claim under the MCPA requires more than malfunctioning appliances, however.  The MCPA prohibits "unfair or deceptive trade practices" and provides a private cause of action.  Md. Code Ann., Com. Law §§ 13-301, 13-303, 13-408.  A private party bringing a claim under the MCPA must show "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes them actual injury." *Stewart v. Bierman*, 859 F.Supp.2d 754, 768 (D.Md. 2012).  A plaintiff must identify a trade "practice" that is unfair, abusive, or deceptive. *Hibdon v. Safeguard Properties, LLC*, No. 14-cv-591-PJM, 2015 WL 4249525, at *7 (D.Md. July 9, 2015); *see also Wheeling v. Selene Financial LP*, 473 Md. 356, 388 (2021) ("Section 13-303 of the MCPA generally prohibits unfair, abusive, or deceptive trade practices, and § 13-301 of the Act contains a nonexclusive list of practices that are defined to be unfair, abusive, or deceptive.").  If relying on clause (iv) it logically follows that a plaintiff must define the "particular" standard promised.

The requirement of causation comes from the cause of action provision: "any person may bring an action to recover for injury or loss sustained by him *as the result of a practice prohibited by this title*." Md. Code Ann., Com. Law § 13-408(a) (emphasis added). The injury must be "an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the [ ] misrepresentation." *Green v. Wells Fargo Bank, N.A.*, 927

F.Supp.2d 244, 255 (D. Md. 2013), *aff'd*, 582 Fed.Appx. 246 (4th
Cir. 2014) (alteration in original) (quoting *Lloyd v. Gen. Motors
Corp.*, 397 Md. 108, 143 (2007)).

Ms. Peters needed to forecast evidence of at least two things
in response to the motion for partial summary judgment: (1) that
her appliances were not working to the standard or quality promised
by Best Buy; and (2) that the appliances were not working to that
standard or quality because the standard represented was false.
Ms. Peters's opposition cites as evidence her interrogatory
responses, her supplemental interrogatory responses, and her
supplemental responses to Best Buy's request for production of
documents.

Ms. Peters does not identify the standard, quality, grade,
style, or model that was promised and has forecasted no evidence
that Best Buy's failure to provide equipment and installation
services at a "particular" standard, quality, grade, style, or
model caused the problems with the appliances.  Moreover, she has
not identified what practice of Best Buy's is unfair, abusive, or
deceptive.[4]  In lieu of such evidence, Ms. Peters is relying on a

---

[4] On the other hand, Best Buy forecasts causation evidence.
Its expert witness opines in his report that other contractors and
Ms. Peters's own family members may have caused the malfunction of
appliances by unplugging or turning off appliances.  ECF No. 25-
1, at 6-7.  He also opines that routine wear and tear may have
caused some of the problems, and that there is no evidence that
Best Buy is responsible for that wear and tear.  *Id.*  Finally, he
opines that "[t]he nature of the most recent Best Buy work at the

kind of *res ipsa loquitur* theory—that the failure of the appliances and systems is evidence of Best Buy's liability.  Ms. Peters provides no citation for importing a *res ipsa loquitur* analysis to the MCPA.  Likewise, she provides no citation in Maryland law that mere breach of contract is a violation of the MCPA.  Other states explicitly reject such a theory.  *See, e.g.*, *Barbour v. Fidelity Life Ass'n*, 361 F.Supp.3d 565, 573-74 (E.D.N.C. 2019).  Ms. Peters has failed to generate evidence supporting essential elements of her claim.  Best Buy is entitled to judgment on Count III.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion in *limine* will be granted.  Defendants' motion for partial summary judgment will be granted in part and denied in part.  A separate order will follow.

_____  /s/  _____
DEBORAH K. CHASANOW
United States District Judge

---

Peters residence reflects on-going system upkeep and maintenance as opposed to a purported lingering and never-ending installation."  *Id.* at 7.